## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DEIRDRE KELLY HECTOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **XAVIER BECERRA,** | ) | **NO.:** _____ |
| **SECRETARY, UNITED STATES** | ) | |
| **DEPARTMENT OF HEALTH** | ) | |
| **AND HUMAN SERVICES (HHS),** | ) | |
| **AND SHERRI BERGER,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff DEIRDRE KELLY HECTOR ("Plaintiff" or Mrs. Hector"), and files this, her Complaint and Jury Demand, showing the Court the following:

### I.

### NATURE AND PURPOSE

1.

This is an action for damages, retaliation, declaratory and injunctive relief authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 as amended, including the Civil rights Act of 1991, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991, and 42 U.S.C. 1981A ("Title VII").

1

2.

This lawsuit is brought because Defendant, XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ("Defendant" or "HHS"), pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* ("Title VII"), maintained a policy, practice, custom or usage of discrimination against Mrs. Hector, in regard to terms, conditions and privileges of employment, and for damages, back pay and other equitable relief for Mrs. Hector, who has been discriminated and retaliated against by Defendant on the basis of her race, gender and reprisal (prior EEOC activity).

## II.

## <u>JURISDICTION AND VENUE</u>

3.

This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections 2201 and 2202, and Title VII.  This Court has jurisdiction to hear the Mrs. Hector's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337 and 42 U.S.C. 2000e-5(f) [Section 706(0(s) and (3) and 704(a) of Title VII].  This Court also has jurisdiction to hear Mrs. Hector's claims pursuant to 5 U.S.C. Section 7703(b)(2).

4.

Venue is proper in the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. Section 1391(b) as Fulton County, Georgia is the County where the Defendant operates the Center for Disease Control and Prevention ("CDC"), the employer's business location and when Mrs. Hector was employed.

## III.

## <u>EXHAUSTION OF ADMINISTRATIVE PROCEDURES</u>

5.

On February 5, 2019, Mrs. Hector filed her Complaint for employment discrimination alleging discrimination by the CDC. (Exhibit 1).

6.

As set out in her Complaint, Mrs. Hector contended that each of the following actions taken against her either unreasonable interfered with her work environment or created an intimidating, hostile and offensive work environment:

1. During January 2016,  the Complainant was not provided with a job offer after being selected for the position of Special Projects Advisor, GS-0301-15, under Announcement No. HHS-CDC-M1-17-1869437;

2. On or about August 15, 2017, the Complainant's supervisor stated that he would not submit a waiver for the Special Projects Advisor, GS-0301-15, position;

3.      In February 2018, the Acting Deputy Director, OEEO, Deputy Director for Management and Process Improvement, and the CDC Freedom of Information Act (FOIA) Director sent the Complainant an email message which was bullying and unprofessional; In February 2018, the Acting Deputy Director, OEEO, Deputy Director for Management and Process Improvement, and the CDC Freedom of Information Act (FOIA) Director sent the Complainant an email message which was bullying and unprofessional;

4.      During early April 2018, the certificate for the position of Special Projects Advisor, GS-0301-15, was canceled after the Complainant notified management that the certificate was still open;

5.      During April 2018, the Acting Director, OEEO, and CDC FOIA Director spoke to the Complainant in a harsh, demeaning, and unprofessional tone and demonstrated unprofessional behavior;

6.      During April 10, 2018, and May 2018, the Complainant's projects were reassigned to other staff members;

7.      On August 21, 2018, the CDC OEEO Director informed the Complainant that her job duties were transferred to create the OEEO Deputy position;

8.      During the period of August 2018 to November 2018, the Agency re-announced the Special Projects Advisor, GS-0301-15, position under the title of

4

Director for EEO Programs, Announcement No. HHS-CDC-M1-19-10315299, added broad duties, and included relocation expenses to adversely affect the Complainant's ability to compete for the position;

9.     On or about September 19, 2019, the CDC OEEO Director failed to address disrespectful and demeaning actions performed by CDC Senior Leadership5 and Centers, Institutes, and Offices (CIOs) toward the Complainant;

10.     On October 15, 2018, the Complainant was informed that her supervisory and managerial duties would be removed effective October 28, 2018;

11.     On November 17, 2018, the Complainant received notification from Human Resources that her application for the position of Director for EEO Programs, Announcement No. HHS-CDC-M1-19-10315299, was not referred to the Selecting Official;

12.     On November 29, 2018, the CDC OEEO Director yelled at the Complainant and belittled her in the OEEO hallway;

13.     On January 31, 2019, the Complainant was given a "special rating" rather than an annual performance rating, and the Complainant was not eligible for multiple time-off awards and other accolades previously received;

14.     On February 2, 2019, the Complainant received a letter from the CDC FOIA Director informing the Complainant that the information she requested regarding non-selections and job cancellations would cost her $894; and

5

15.     From 2010 to October 2018, the Complainant was paid at the grade of GS-14 for performing the same duties as GS-15 management officials. (ROI at 62-65).

7.

On May 20, 20219, Mrs. Hector received a Letter of Acceptance from the Equal Employment Opportunity Compliance and Operations Division. (Exhibit 2).

8.

On August 23, 2019, Mrs. Hector requested a Hearing before the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 3).

9.

The Complainant, Mrs. Hector, and the Agency, HHS, attended an Initial Conference on February 20, 2020, where the Administrative Law Judge issued a Scheduling Order.

10.

On July 20, 2020, pursuant to the Scheduling Order, the Agency filed its Motion for Summary Judgment, and Mrs. Hector filed her Response to the Agency's Summary Judgment on August 12, 2020.

11.

On May 28, 2021, the Administrative Law Judge issued a Decision and Order Granting Agency's Motion for Summary Judgment. (Exhibit 4).

12.

On July 9, 2021, the Agency issued a Final Order with Appeal rights. (Exhibit 5).

13.

Ninety (90) days has not expired from the date of receipt of the Agency's Final Decision.

14.

Plaintiff has complied with all other conditions precedent to the institution of this lawsuit and the claims herein.

**IV.**

**PARTIES**

15.

Plaintiff, Deirdre Kelly Hector, is an African American female citizen of the United States and a resident of Gwinnett County, Georgia.

16.

Defendant, Xavier Becerra, is the Secretary of the United States Department of Health and Human Services and according to the Agency's Final Order dated July 9, 2021, is the appropriate Defendant in Title VII cases. (Exhibit 5).

17.

Defendant is an employer within the meaning of Title VII (42 U.S.C. 2000e, *et seq.*).

Defendant, Sherri Berger ("Defendant Berger" or "Ms. Berger"), is a White female citizen of the State of Georgia and is sued in her individual capacity. Defendant Berger is the CDC's Chief Operating Officer and at all times pertinent to this action, was acting under color of state law.

## V.

## <u>FACTUAL ALLEGATIONS</u>

18.

Mrs. Hector is an African American female.

19.

Since 2010, Mrs. Hector served in the position of Resource Manager, GS-0301-14, OEEO, OD, CDC and, as Deputy Director to Reginald Mebane (Mr. Mebane) and OEEO Management Official before being replaced.

20.

From  June 2016 until he was replaced, Roger Andoh (Mr. Andoh) has served as the FOIA Director, OD, CDC.  Mr. Andoh served as CDC FOIA director from June 2016.  He also served as acting Deputy Director at OEEO from June 2018 to December 2018.

8

21.

 Mr. Andoh was detailed for 120 days as Deputy Director for Management and Process Improvement to assist in immediately implementing recommendations from the OD redress process and to assist (OEEO, OD, CDC) in improving office standard operating procedures.  Mr. Andoh, was detailed as Deputy Director of Management from February 2018 to June 2018.

22.

Between June 2018 and December 2018, Mr. Andoh was detailed as Acting Deputy Director, OEEO, OD, CDC. During the relevant timeframe, Mrs. Hector's first level supervisors were Mr. Andoh and Mr. Mebane.

23.

From 2010 to the present, Mr. Mebane has served as the Director, OEEO, OD, CDC.

24.

Mr. Mebane was the Mrs. Hector's first line supervisor and became her second-level supervisor during the period of time that  Mr. Andoh and Linnett Griffiths (Ms. Griffiths) became her first line supervisor.

25.

During the relevant time period, Ms. Berger had served as the Chief Operating Officer, OCOO, OD, CDC.  During the timeframe relevant to this case, Ms. Berger served as Mr. Mebane's first level supervisor.

26.

As the Chief Operating Officer, Ms. Berger's responsibilities included oversight" of OEEO.

27.

Ms. Berger is a White female.

28.

In or about December 2016, Mrs. Hector applied for a Special Projects Advisor, GS-0301-15, position with the CDC OEEO advertised under Job Announcement No. (JAN) HHS-CDC-M1-17-1869437.

29.

On January 19, 2017, Vanessa Gordon, Program Specialist, OEEO, OD, CDC, acting at the request of Mr. Mebane, signed the Competitive Merit Promotion Certificate of Eligibles for the Special Projects Advisor, GS-0301-15, position to document Mr. Mebane's selection of Mrs. Hector.

30.

Mr. Mebane verbally informed Mrs. Hector that he had selected her for the Special Projects Advisor position and told her that the CDC Human Resources Office (HRO) would be in touch with her to extend the official written offer for the position.

31.

The CDC HRO did not extend an official written offer to Mrs. Hector for the Special Projects Advisor position prior to the imposition of a federal government-wide hiring freeze directed by the President effective January 22, 2017.

32.

The government-wide hiring freeze was lifted in April 2017, but HHS continued the freeze (with exceptions for filling positions related to national security and public safety) until September 2018.

33.

Although he could, Mr. Mebane did not seek a waiver of the above-referenced hiring freeze to fill the Special Projects Advisor position.

34.

Mr. Mebane did not consider the Special Projects Advisor position to be an EEO-specific position that was critical to the daily EEO program operational

requirements, mandates, and deadlines under which EEO programs are held accountable.

35.

On or about August 15, 2017, Mr. Mebane told Mrs. Hector, in response to her query about the Special Projects Advisor position, that she should "stop acting like an angry Black woman" and that "he would not be having this conversation with [her] if [she] was a man because a man would just leave it alone" when she inquired why he did not request a waiver.

36.

In or about April 2018, CDC HRO canceled the certificate for the Special Projects Advisor, GS-0301-15, position advertised under JAN HHS-CDC-M1-17-1869437 at the request of Ms. Berger, but only after Mrs. Hector advised Mr. Andoh that the Special Projects position was still open and after Ms. Berger had a conversation with Dia Taylor, the Chief Resource Officer, who instructed Christopher Wright to cancel the position.

37.

On February 7, 2018, Mr. Andoh emailed Mr. Mebane and requested his assistance in setting up office space, equipment, and access to systems in preparation for Mr. Andoh's upcoming detail to CDC OEEO.

12

38.

On February 8, 2018, Mr. Mebane responded to the above-referenced email of Mr. Andoh (and copied Mrs. Hector) advising that Mrs. Hector would "assist with [Mr. Andoh's] request asap."

39.

Mrs. Hector was the point of contact as indicated by Mr. Mebane in his email dated February 8, 2018.  Mrs. Hector spoke to Mr. Andoh on February 13, 2018 regarding his office.  Vanessa Gordon and Sandra Marrow was assigned to set-up Mr. Andoh's office, in which Vanessa completed before his report date.  According to HRO http://intranet.cdc.gov/hro/pay-time-leave/time-schedules/index.html#work-schedules CDC regular hours are 8am to 4:30pm, Mon-Fri and core hours are from 9 to 2.  Mrs. Hector reports at 9:00 a.m.  Mr. Andoh reported around 6:30 a.m., which is before regular hours. Additionally, as a CDC senior leader he is fully aware of CDC core hours and scheduling.

40.

On February 13, 2018, Mrs. Hector spoke to Mr. Andoh about his detail and office space for 10 minutes and 27 seconds, and the February 21, 2018, meet and greet with the OEEO staff.  Additional follow-up was not necessary.  Mr. Andoh knew 1) where the OEEO office was located;  2) Ms. Gordon was setting up his office; 3) he had not requested anything special for his office; he was aware of the CDC general

working hours and CDC core hours; and 4) Ms. Kelly Hector was his point of contact.

41.

On February 16, 2018, Mr. Andoh sent an email to Mrs. Hector that is the subject of her Complaint in Issue 3, stating as follows:

Good evening Deirdre,

It is past 6:00 pm and I haven't heard from you concerning my office space, equipment availability, etc. I am left to assume that I will know all of this on Tuesday, however I have not been informed about who to contact on Tuesday and at what time. Is it you or someone else? I find this lack of information very frustrating, and my email is meant to communicate my displeasure.

Roger.

42.

On October 18, 2018, Mrs. Hector made initial contact with a counselor of the HHS EEO Compliance and Operations Division regarding the above-listed issues. In her Complaint, she  alleged that Mr. Andoh, Mr. Mebane, and Ms. Berger are the Agency officials who subjected her to disparate treatment, harassment, and reprisal as set forth in her accepted claims.

43.

According to Ms. DeAnne Arcement, Mr. Andoh expressed to her that he believed Mrs. Hector had too much power.  Ms. Arcement also expressed that Mr. Andoh's tone with females was different than males. Additionally, Mr. Stockton

14

observed Mr. Andoh as having a "strong disagreement" and predisposition as well as an aggressive attitude with members in the office.

44.

During the relevant time period, Mr. Andoh spoke to Mrs. Hector in a harsh, demeaning, or unprofessional tone or demonstrated unprofessional behavior toward her.

45.

In or about September 2017, and around or between May 2018, the Agency conducted an internal review of CDC OEEO to critically examine its business processes, policies, positions, functions, and structure. According to Ms. Berger, "CDC undertook a comprehensive evaluations of the OEEO. I oversaw, as the Chief Operating Officer, three separate management reviews that impacted, in whole or in part, the CDC OEEO."

46.

The first review was a series of senior leader engagements that looked at the OEEO, the Office of Minority Health and Health Equity, and the HRO to obtain a better understanding of the workforce challenges and opportunities within each organization, and to hear concerns regarding and recommendations for improving the service provided by each of the listed offices.

47.

The second review was a small working group assessment of the OEEO. Nine CDC leaders of diverse backgrounds (e.g., gender, race/ethnicity, disabled status, grades from GS-14 to SES) evaluated the organization's processes, work environment, and organizational structure/staffing to assist the OEEO in improving the services it provides.

48.

The third review was an OEEO Customer Survey.

49.

According to sworn testimony from one of the reviewers on the second review team, the team only had one recommendation as to the current Deputy Director not being a good fit for OEEO.

50.

Prior to April 2018, Mrs. Hector had been responsible for updating the CDC OEEO webpage.

51.

In or about April 2018, Mr. Andoh transferred Mrs. Hector's responsibility for updating the CDC OEEO webpage to Rebecca Gold, a white female. Prior to October 2018, Mrs. Hector's position as Resource Manager, GS-0301-14, was coded as supervisory. (ROI at 167).

52.

On October 15, 2018, Mr. Mebane notified Mrs. Hector by letter that she was being reassigned from her current position of supervisory Resource Manager, GS-0301-14, to the non-supervisory position of Resource Manager, GS-0301-14, in CDC OEEO as a result of the above-referenced internal review, with an effective date of October 28, 2018.

53.

Mrs. Hector's grade was affected as she was demoted to a lower rank within her position and responsibilities. Therefore, future opportunities could be limited as she was demoted and removed from a supervisory status and authorities were removed. The change in her role and changes in duties and responsibilities represent a fundamental change to her grade and terms and conditions of employment, particularly, given her seniority and job status. The reduction of responsibility and status implies that she was incapable of performing her job at the higher rank of supervisory. Additionally, the duties and responsibilities she had were removed to create a GS-15 position in the office.

54.

On August 6, 2018, the CDC advertised the redefined CDC OEEO Deputy Director position under the title of Associate Director for EEO Programs, GS-0301-15, JAN HHS-CDC-M1-18-10273679.

55.

Mrs. Hector applied for the Associate Director for EEO Programs position and was referred by HRO on a Certificate of Eligibles to the Selecting Official for consideration.

56.

On October 3, 2018, the corrected vacancy announcement was issued for the redefined OEEO Deputy Director position under the title of Associate Director for EEO Programs, GS-0301-15, JAN HHS-CDC-M1-19-10315299.

57.

Mrs. Hector submitted a Competitive Merit Promotion application for the re-announced Associate Director for EEO Programs position through USA Staffing (USAS).

58.

USAS scored each candidate's responses to the self-assessment questionnaire and rank-ordered them by score on the Applicant List (also known as the "Ranking List") for the re-announced Associate Director for EEO Programs position.

59.

After the vacancy announcement for the re-announced Associate Director for EEO Programs position was closed, and CDC HRO received the applications from USAS, Terri Dotson, Lead HR Staffing Specialist, Staffing Team 1, Client Services

Office, HRO, CDC, and Mr. Andoh, as SME, evaluated the applications to confirm whether the candidates met the minimum qualifications for the position.

60.

After determining who qualified for the Associate Director for EEO Programs position re-advertised under JAN HHS-CDC-M1-19-10315299, Terri Dotson prepared four Certificates of Eligibles for the Selecting Official: i.e., the Competitive Merit Promotion, Non- Competitive Merit Referral, Commissioned Corps, and Schedule A Certificates of Eligibles.

61.

For qualified candidates being considered under Competitive Merit Promotion, Ms. Dotson determined the minimum self-assessment score, which had to be met by such candidates in order to make the Competitive Merit Promotion Certificate of Eligibles.

62.

In accordance with the Merit Promotion Plan, as a general rule, the minimum self-assessment score for candidates being considered under Competitive Merit Promotion is the lowest score of the top 10 scores on the Applicant List prepared by USAS (when there is no "natural break" in the Applicant List scores), with the caveat that for the purpose of creating the Applicant List, USAS automatically places candidates who have claimed Career Transition Assistance Plan (CTAP) or

Interagency Career Transition Assistance Plan (ICTAP) eligibility at the top of the Applicant List if they have scored at least 85 on the self-assessment questionnaire.

63.

According to Ms. Dotson, the four scores listed at the top of the Applicant List prepared by USAS for the re-announced Associate Director for EEO Programs position were likely associated with candidates claiming CTAP or ICTAP.

64.

Since the "top four" scores of the Applicant List for the re-announced Associate Director for EEO Programs position were already set aside by USAS for likely CTAP or ICTAP candidates, Ms. Dotson had to look at the next six highest scores (i.e., 97, 96, 95, 94, 93, and 92) in order to establish the minimum cut-off score needed to make the Competitive Merit Promotion Certificate of Eligibles.

65.

In light of the above, Ms. Dotson established a cut-off score of 92 as the minimum self-assessment score needed for a qualified candidate to make the Competitive Merit Promotion Certificate of Eligibles for the re-announced Associate Director for EEO Programs position.

66.

Ms. Dotson did not place Mrs. Hector on the Competitive Merit Promotion Certificate of Eligibles for the re-announced Associate Director for EEO Programs

position because the latter's self-assessment questionnaire score of 88 did not meet the minimum cut-off score of 92.

67.

Ms. Dotson placed all qualified applicants being considered under Non-Competitive Merit Referral (such as those who were already serving in GS-15 positions) on the Non- Competitive Merit Referral Certificate of Eligibles for the re-announced Associate Director for EEO Programs position.

68.

On January 16, 2019, Mr. Mebane returned the Non-Competitive Merit Referral Certificate of Eligibles to HRO through the USAS Upgrade System, reflecting his decision to hire Ms. Griffiths for the re-announced Associate Director for EEO Programs position.

69.

None of the things listed on her resume were requirements for the position of Associate Director for EEO Programs.

70.

Prior to October 28, 2018, the Mrs. Hector was assigned to the OEEO as a supervisory Resource Manager, GS-0301-14.

71.

Mrs. Hector serves as the OEEO Management Official.

72.

Mrs. Hector was one of several Management Officials at CDC. Additionally, each Center, Office and Institute, has a Management Official. They only have an on person serving in this capacity. (See CDC MASO Management Official Listing for the Agency.)  Because each Center, Office and Institute, only has one person serving in this capacity, there would not be another person in OEEO performing the same duties as the complainant. The counterparts for this position would be the person serving as the MO in each Center, Office and Institute. The Complainant is responsible for whatever the requirement is required of the Management Official. Duties include, but are not limited to: serving as a senior advisor to the program director, oversight of program operations and management, overseeing all aspects of  financial management and resource management for the organization which includes; personnel responsibilities including position structing, performance management, evaluation, training, labor related activities, year out budgeting and budget execution, budget negotiation and agreement, furthering the goals of EEO, spend plans, financial controls, financial guidance, policies and procedures due to final operations, short and long term goals, objectives, and effectiveness. Prior to October 2018, Mrs. Hector was also responsible for the supervision of a small group.

## **CONDITIONS PRECEDENT**

73.

All conditions precedent has been performed or have occurred.

## **COUNT I**

## **SEXUAL DISCRIMINATION**
## **VIOLATION OF TITLE VII**

74.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

75.

Mrs. Hector, a female, is a member of the protected class and entitled to the protections of Title VII, 43 U.S.C. § 2000e, *et seq.,* including, but not limited to, the right to be free from sexual discrimination and harassment in her employment.

76.

During her employment, Mrs. Hector's supervisors subjected her to disparate treatment in the terms, conditions, benefits and privileges of employment, including but not limited to, discriminatory comments and remarks, discriminatory pay practices and process within the OEEO, cancelling, changing, and reissuing job positions, and giving her a "special rating" instead of an annual performance rating, which made Mrs. Hector not eligible for awards and accolades she previously received.

77.

Said discrimination and harassment was directed at Mrs. Hector because of her sex, female.

78.

The sexual discrimination was severe and pervasive and adversely affected the terms, conditions, and privileges of Mrs. Hector's employment.

79.

Defendants knew or should have known of the harassment and failed to take prompt and remedial action.

80.

Mrs. Hector's efforts to get the harassment stopped resulted in a tangible job detriment.

81.

As a direct and proximate result of Defendants sexual discrimination and harassment, Mrs. Hector has suffered and continues to suffer economic damages (lost wages and job benefits), severe emotional distress, mental anguish, embarrassment, humiliation, and physical suffering.  All of these damages are as yet undetermined but are believed to be an amount in excess of $75,000.00.

## COUNT II

## VIOLATION OF TITLE VII RACE BASED
## DISCRIMINATION WITH TANGIBLE EMPLOYMENT ACTION

### 82.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully forth herein.

### 83.

Mrs. Hector is an African American, and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

### 84.

The aforesaid acts and omissions of Defendants, directly and by and through their agents, officers, managers, supervisors and proxies, including but not limited to Defendants, including the failure to have a properly functioning harassment policy, the failure to remedy the effects of discrimination by Defendants, discrimination in the terms, privileges and conditions of Mrs. Hector's employment, harassment of Mrs. Hector and condoning the existence of a hostile work environment, were in violation of Defendants duty not "to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

85.

Defendants acted intentionally, willfully, and wantonly or alternatively, with reckless indifference or negligence to Mrs. Hector's federally protected rights.

## **COUNT III**

## **REPRISAL DISCRIMINATION VIOLATION OF TITLE VII**

86.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

87.

Mrs. Hector is entitled to the protections of Title VII, 42 U.S.C. § 2000e *et seq.*, including but not limited to, the right to be free from retaliation for opposing racial discrimination, sexual discrimination and for prior EEO activity.

88.

On several occasions during her employment, Mrs. Hector reported and opposed the harassment and discrimination she was subjected to, including filing an EEO Complaint.

89.

Because of Mrs. Hector's reports and opposition to the racial harassment and sexual discrimination and asserting her rights, Defendants retaliated and continued to retaliate against Mrs. Hector, including subjecting her to adverse working

conditions, made false accusations about her, subjected her to false disciplinary actions, and ultimately, she had to resign from her employment.  Such retaliation and reprisal actions violate 42 U.S.C. § 2000e-3(a).

90.

As a direct and proximate result of Defendants retaliation and reprisal, Mrs. Hector has suffered and continues to suffer economic damages (lost wages and job benefits), severe emotional distress, mental anguish, embarrassment, humiliation, and physical suffering.  All of these damages are as yet undetermined but are believed to be an amount in excess of $75,000.00.

## **COUNT IV**

## **INTENTIONAL INFLICTION OF EMOTIONAL STRESS**

91.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

92.

Defendant Berger intentionally, maliciously, wantonly and in gross and reckless disregard for Mrs. Hector's health and safety, engaged in extreme and outrageous conduct when she subjected Mrs. Hector to discrimination and harassment, causing Mrs. Hector to suffer great emotional distress, mental anguish, loss of income, humiliation, and other indignities.

## COUNT V

## NEGLIGENT SUPERVISION

93.

The following paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

94.

At all times relevant hereto, Defendant Berger knew or should have known that Mr. Andoh and Mr. Mebane were using improper motives to assign, transfer, and promote employees to certain positions.

95.

Defendant Berger negligently Supervised Mr. Andoh and Mr. Mebane and allowed them to carry out their discriminatory and unlawful acts.

96.

As a direct, proximate, and foreseeable result of the Defendant 's negligence, Mrs. Hector was discriminated, harassment, intimated, had her privacy invaded, retaliated against and reassigned to remedial tasks. Mrs. Hector has suffered and continues to suffer lost wages, damages and benefits for which the Defendant is directly liable, strictly liable, liable by proxy and vicariously liable.

## COUNT VI

## NEGLIGENT RETENTION

### 97.

The following paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

### 98.

Pursuant to O.C.G.A. § 34-7-20, an employer "is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency."

### 99.

At all times relevant hereto, Defendant Berger knew or should have known about prior complaints about Mr. Andoh and Mr. Mebane's discriminatory treatment and harassment of other employees.  By retaining Mr. Andoh and Mr. Mebane, she was reasonably foreseeable that they would injure others in the performance of their duties, including Mrs. Hector.

### 100.

Defendant Berger is liable for hiring and or retaining Mr. Andoh and Mr. Medane when she knew, or in the course of ordinary care, should have known they were not suited for the particular employment.

101.

As a direct, proximate, and foreseeable result of Defendant's negligence retentions of Mr. Andoh and Mr. Mebane, Mrs. Hector was sexually discriminated, harassed, intimated, and retaliated against.  Mrs. Hector has suffered and continues to suffer lost wages, damages and benefits for which the Defendant is directly liable, strictly liable, liable by proxy and vicariously liable.

## COUNT VII

## DEPRIVATION OF FEDERAL RIGHTS UNDER COLOR OF STATE LAW IN VIOLATION OF 42 U.S.C. § 1983 BY ALL DEFENDANTS

102.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

103.

Defendants have violated Mrs. Hector's federal rights protected by the Federal Constitution and by Federal Statutes or regulations under color of state law, ordinance, regulation, custom or usage of the Defendants in violation of 42 U.S.C. § 1983.

104.

The violation of Mrs. Hector's rights came about by the actions of Mr. Andoh and Mr. Mebane under color of regulations, custom, policy or usage of HHS as

described above, as well as the HHS's custom and policy of not adequately training all its employees, officers or investigating officers' conduct.

105.

The conduct of Defendants in harassing, discriminating against, and retaliating against Mrs. Hector was based upon her race, sex/gender discrimination and prior complaints in violation of her rights to equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution.

106.

This violation of rights was ongoing, and Defendants continued to violate Mrs. Buckley's rights by acting under color of state law and local ordinances, regulations, customs, and usages of the HHS throughout the time period Mrs. Hector was employed by the HHS, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests the Court to award her:

(a)    Compensatory damages, including, but not limited to, economic damages, severe emotional distress, mental anguish, embarrassment, humiliation, and physical suffering, an amount undetermined, but believed to be in excess of $75,000, pursuant to 42 U.S.C. § 2000e-5(g);

(b)    Costs, disbursements, and prejudgment interest pursuant to 42 U.S.C. § 2000e-5(k);

(c)     Costs and attorneys' fees as part of the costs pursuant to 42 U.S.C. §
2000e-5(k);

(d)     Any other equitable relief as the court deems appropriate pursuant to
42 U.S.C. § 2000e-5(g);

(e)     The Defendants be required to change the policy, procedures and
practices involving the investigation of discrimination, harassment, and complaints
to OPS; and

(f)     Such other and further relief as this Court deems just and proper.

This 7th day of October, 2021.

Respectfully submitted,

**THE BURKE LAW GROUP LLC**

*/s/ E. Earle Burke*
E. Earle Burke
Ga Bar No. 095550
*Attorney for Plaintiff*

199 Peters Street
Suite A
Atlanta, Georgia 30313
Telephone No.: (404) 688-1210
Facsimile No.:  (404) 688-1251
Email: eburke@burkelawatl.com